# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

PEGGY GREEN,

      Plaintiff,

vs.                                                                            No. CIV 03-0154 JB/RHS

NEW MEXICO DEPARTMENT OF LABOR,
and SUSAN SOSAYA, Supervisor/UI Examiner II/III
Unit, in her Individual Capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Motion for Summary Judgment, filed April 8, 2004 (Doc. 27).  The Court held a hearing on this motion on June 10, 2004.  The primary issue is whether the Plaintiff has established a question of  fact whether the Defendants' reasons for discharging her were a pretext for gender discrimination.  Because the Court finds Green has not created a question of fact on pretext, the Court will grant the motion for summary judgment.

## FACTUAL BACKGROUND[1]

Green began working as an unemployment claims examiner at the Department of Labor

---

[1] At the hearing on this motion the Court determined that portions of the Affidavit of Juan I. Garcia are conclusory without providing factual support and, therefore, inappropriate for the Court's consideration on summary judgment.  See Transcript of Hearing at 54:1 - 56:18 (June 10, 2004)(The Court's citations to the transcript of the hearing refer  to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.).  See also Salguero v. City of Clovis, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004).  Specifically, Garcia's affidavit indicates his beliefs that (i) Green was not given an adequate opportunity to gain familiarity with her position and (ii) Green was treated differently from males, including Garcia, Steve Montoya and David Saavedra.  Garcia does not, however, provide evidence in his affidavit that he has the personal knowledge to come to these conclusions or on what factual basis he rests these conclusions.  The Court thus did not consider paragraphs 9 and 10 of Garcia's affidavit in ruling on this motion.

("DOL") on October 22, 2001.  See Complaint for Sex Discrimination and for Deprivation of Equal

Protection Under Color of State Law ¶ 12, at 4, filed February 3, 2003 (Doc. 1)("Complaint").  DOL

hired her as a probationary employee.  See Deposition of Peggy Green at 20:25 – 21:9 (taken

December 22, 2003).  Green was aware that DOL hired her as a probationary employee, see Affidavit

of Joel Korngut ¶ 4, at 2 (executed March 29, 2004), which status did not entitle her to an appeal of

any decision to terminate her employment, see Disciplinary Actions Notice, dated and signed by

Green October 22, 2001.

Green also received a copy of DOL's code of conduct at the time of her hiring.  See Green

Depo. at 26:9 – 27:10.  DOL's code of conduct provides:

STANDARDS OF BEHAVIOR

A.    As pubic servants, all employees are expected to maintain the highest
standards of personal conduct at all times.  On the job, nothing but the highest
standards of honesty and integrity are acceptable.  All employees are expected to
devote their full working day to the business of the state.

B.    Employees must cooperate with their supervisors, follow instructions and
perform their work in a professional and competent manner.  Employees are expected
to perform their work efficiently and to meet established Performance Appraisal and
Development criteria.

C.    Employees will maintain an attitude of courtesy and service to other state
employees, and individuals who contact the Department.  Rude or unbecoming
behavior towards clients, co-workers or supervisors will not be tolerated.

* * * *

F.    Employees shall acquaint themselves with all Department policies, rules and
regulations and are expected to comply with same.

DOL Code of Conduct, Policy Issuance No. 11 (August 23, 2001).

Susan Sosaya supervised Green at the time she was terminated from employment with DOL.

See Deposition of Susan Sosaya at 50:3-7 (taken February 6, 2004).  Sosaya recommended Green's dismissal.  See Recommendation of Dismissal (October 10, 2002).  DOL terminated Green on October 11, 2002, see Complaint ¶ 17, at 5, within her one year probationary period.

DOL terminated Green for violations of its code of conduct, failure to follow supervisor's instructions, and failure to satisfactorily perform her job duties.  See Notice of Termination (October 9, 2002); Korngut Aff. ¶¶ 10-11, at 2-3; Affidavit of LaVerne Saavedra ¶ 16, at 4 (taken March 26, 2004).  Green does not dispute that DOL's stated reason for terminating her was that she violated DOL's code of conduct, but denies that she, at any time while Sosaya was her supervisor, was disrespectful towards Sosaya.  See Affidavit of Peggy Green ¶ 11, at 2 (executed May 4, 2004).  Green denies any wrongdoing in connection with her private conversations.  See id. ¶ 23, at 4-5.

During her employment with DOL, Green was promoted to the position of Examiner III.  See Green Aff. ¶ 6, at 2.  That promotion was based in part on Green's successful work performance, and good work habits.  See id. ¶ 7, at 2; Annual Performance Evaluation (May 28, 2002); Weekly Performance Reports (September 4, 2002; September 16, 2002; September 26, 2002; October 1, 2002).  During Green's employment with DOL, she received high ratings on her weekly performance reports.  See Weekly Performance Reports.  Her supervisor before Sosaya commented that she was "high[ly] successful."  See Annual Performance Evaluation.

In the evaluation for the week in which Green received a written reprimand, her "Personel Skills" ranking was "Marginal" or a 2 out of 5.  Plaintiff indicates that the issues resulting in Green's reprimand, and later given as support for her discharge, are related to this particular section of her evaluations.  For all other weekly evaluations in the record, including the one closest to her termination, Green received a "Successful" or 3 out of 5 ranking for her "Personel Skills."  In the

other areas of her evaluations, Green received "Outstanding" (4 out of 5) or "Exceptional" (5 out of 5) rankings.

Before Sosaya became Green's supervisor in August 2002, Green was not written up or reprimanded for her conduct or performance as an employee.  See Green Aff. ¶ 8, at 2.  Before the time when Sosaya became Green's supervisor, she had no reason to think or feel that anyone had any complaints or problems with her performance or conduct.  See id. ¶ 9, at 2.  During Green's tenure as an Examiner II, no issue was raised with the quality of her work.  She was awarded a certificate. See id. at ¶ 10, at 2; Affidavit of Juan Garcia ¶ 8, at 2 (executed May 4, 2004)(stating that Green received a certificate similar to the one Garcia received); Certificate for Juan Garcia (October 10, 2002).

Green was instructed in June 2002 not to have her boyfriend, Daniel Griego, come to her work area, because they had engaged in inappropriate behavior at plaintiff's workstation.  See Affidavit of LaVerne Saavedra ¶ 10, at 3 (executed March 26, 2004); Memorandum from LaVerne Saavedra to Peggy Green (dated August 29, 2002).  The Defendants contend that, despite the explicit instruction concerning Griego, Green allowed him to come into her work area in August 2002.  See Saavedra Aff. ¶ 11, at 3.  Green, on the other hand, asserts that, after she was informed that Griego was not allowed to come into her work area, he never came into her work area again.  See Green Aff. ¶ 13, at 3.

In August of 2002, Green told a co-worker that Green's boyfriend, Griego, said he had had an intimate relationship with the co-worker during the time he and Green were dating.  See Affidavit of Jackie C. Martinez ¶¶ 10, 11, at 2 (executed March 26, 2004); Saavedra Aff. ¶ 14, at 3.  In a private conversation during a break at work, Green asked the co-worker if she had sexual intercourse

with Griego.  The Defendants assert that Green used inappropriate and graphic language to describe what her boyfriend had stated.  <u>See</u> Martinez Aff. ¶¶ 10, 12, at 2.  Green contends that it was not uncommon for Green's co-workers from time to time to discuss intimate matters during breaks, and there was not anything in her conversation with this co-worker that was something that Green had reason to believe violated DOL's code of conduct.  <u>See</u> Green Aff. ¶ 23, at 4-5.

The Defendants contend that Green's statements were very disturbing to the employee and disrupted that employee's ability to focus on her work.  <u>See</u> Martinez Aff. ¶¶ 13, 14, at 2.  Green maintains that the co-worker merely stated that Griego was "too old" for her, and laughed and joked about it; she did not react in a shocked or disturbed manner.  <u>See</u> Green Aff. ¶ 23, at 5.

In August 2002, it was discovered that Green was keeping work in her desk, which was contrary to DOL procedure.  <u>See</u> Saavedra Aff. ¶ 9, at 3.  Green contends, however, that her job required that she keep certain documents at her work station.  <u>See</u> Green Aff. ¶¶ 16-20, at 3-4.  At no time did Green keep entire files in her desk.  <u>See id.</u> ¶ 21, at 4.

The Defendants contend that Green's co-workers found her behavior toward her supervisor, Sosaya, to be disrespectful and undermining of Sosaya's authority.  <u>See</u> Saavedra Aff. ¶ 13, at 3.  Green contends that she was not disrespectful of Sosaya.  <u>See</u> Green's Aff. ¶ 11, at 2.  Green asserts that her direct experience on the job refutes this contention.  Green's co-workers did not state to her that her behavior was inappropriate towards Sosaya.  The first Green heard that Sosaya thought that Green's conduct was inappropriate was shortly before she fired Green.  <u>See id.</u> ¶ 24, at 5.  Green asserts that she is a soft-spoken and respectful person, and that this charge is unfounded.  <u>See id.</u>

In October 2002, Sosaya gave Green a direct order in connection with her job duties.  Rather than discuss with Sosaya concerns or issues she had with the directions, Green approached Jackie

Martinez to discuss the matter.  See Martinez Aff. ¶¶ 6 - 8, at 2; Sosaya Depo. at 94:23-96:17.  The

Defendants contend that this action was contrary to direct instructions that Sosaya and the staff

manager had given to Green.  See Saavedra Aff. ¶ 7 & 8, at 2-3.  Green disputes this assertion,

stating that she was not given a direct instruction not to approach Martinez.  See Green Aff. ¶ 25,

at 5-6.  Martinez was once Green's supervisor, and it was common for Green to approach him and

ask him questions.  It was common for all of the Examiners to approach Martinez and Maggie Neel

with questions.  See id.  Green contends that she was not given any direct instruction not to seek

guidance from Martinez, or from any supervisor or co-worker.  See id.

The Defendants contend that Green was given the opportunity to address the concerns her

supervisor and staff manager had with her performance and behavior.  See Saavedra Aff. ¶ 15, at 4;

Sosaya Depo. at 58:13 – 59:10.  Green disputes this contention, stating that, shortly before she was

terminated, she had a written reprimand unceremoniously presented to her and that she was not told

that she had any right to respond.  Green attempted to respond in writing, but there was no feedback,

dialogue, or communication at all with her forthcoming from management, including Sosaya, about

the matter.  The next thing that happened was that Green was fired.  See Green Aff. ¶ 26, at 6.  Green

did not address the concerns regarding code of conduct violations, job performance, and failure to

follow her supervisor's instructions.  See Saavedra Aff. ¶ 4 & 15, at 2 & 4; Korngut Aff. ¶ 11, at 3;

Sosaya Depo. at 59:3 – 61:1.

The Defendants assert that, during her term of employment with DOL, Green was not treated

differently than other similarly situated male DOL employees.  See Plaintiff's Answers to Defendants'

First Set of Interrogatories, No. 10; Green Depo. at 34:25 – 35:15.  Green contends that, with

Barbara Dominquez, Sosaya would give her a straightforward answer, but would make Green do

research.  See Green Depo. at 36:8-13.  Green was not sure that Leola Gonzales or Jim Apodaca were treated any differently than she was.  See Green Depo. at 36:18-23 (Gonzales); id. at 36:25 – 37:2 (Apodaca).  Green alleged Sosaya talked in a different tone of voice to David Saavedra, to Michael Heath, and to Gerri Jimenez.  See id. at 37:3 – 38:3 (Saavedra); id. at 42:15-25 (Heath); id. at 44:10-25 (Jiminez).  Green did not know who co-workers John Schultz or Ozzy Bermudez were.  See id. at 38:4-7 (Schultz); id. at 38:21-39:14 (Bermudez).  Sosaya would go on breaks with Felicia Santistevan.  See id. at 38:11-14.  Green is unaware of Sosaya's interactions with Jenny Avolio, Juan Garcia, or Ellen Schumacher, and Green did not see them treated differently than she was.  See id. at 41:19-42:1 (Avolio); id. at 49:4-10 (Garcia); id. at 49:11-16 (Schumacher).

Green disputes the Defendants' contention that Sosaya did not treat her differently than other similarly situated male DOL employees.  Green states: "The treatment to which I was subjected, when compared to the fact that Griego was not treated in a similar fashion, establishes that I was not treated the same as similarly situated men."  See Green Aff. ¶ 27, at 6-7.  According to at least one other DOL employee, Sosaya did not treat male employees differently than she treated female employees.  See Saavedra Aff. ¶ 19, at 4.  DOL has terminated other probationary employees in the same manner as Green was terminated.  See Korngut Aff. ¶ 12, at 3 ("The DOL has dismissed employees during their probationary period whose job performance was unsatisfactory or for misconduct connected with their job, in accordance with the State Personnel Board rules.").  Green's termination complied with DOL's standard procedure and State Personnel Board Rules.  See id. ¶ 13, at 3.  As a probationary state employee, Green had no right to any process under the State Personnel Board Rules.  See State Personnel Board Rule NMAC No. 8.3.  Green was not the only female probationary employee DOL terminated.  See Saavedra Aff. ¶ 17, at 4.  The work force unit

in which Green worked was two-thirds female.  See id. ¶ 18, at 4.

Green filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a right to sue letter.  See Complaint ¶ 10, at 2-3.  The Human Rights Division ("HRD") issued a right to sue letter on April 28, 2003, after Green filed this lawsuit.  See HRD Notice of Right to Sue (April 28, 2003).

## PROCEDURAL BACKGROUND

This case involves claims that DOL terminated Green from her probationary employment with DOL in violation of her right to equal protection by the United States Constitution, of the Civil Rights Act of 1964 (Title VII), and of the New Mexico Human Rights Act ("NMHRA") based on gender discrimination.  Green alleges three causes of action against the Defendants: (i) violation of Title VII based on gender discrimination against DOL (Count I); (ii) violation of NMHRA for gender discrimination against DOL (Count II); and (iii) violation of the Fourteenth Amendment based on gender discrimination against Sosaya, pursuant to 42 U.S.C. § 1983 (Count III).  In addition, Green seeks punitive damages from Sosaya in her individual capacity.  The Defendants, the DOL of New Mexico and Susan Sosaya, move the Court for an order entering summary judgment in their favor and against Plaintiff Peggy Green on all claims in her complaint.  Additionally, Sosaya raises qualified immunity as a defense to those claims brought against her in her individual capacity.

## STANDARDS GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party must contradict facts that the movant specifically avers.  See Lujan v. National Wildlife

Federation, 497 U. S. 871, 888 (1990). The court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.  See Kennedy v. Silas Mason Co., 334 U. S. 249, 252 (1948).

The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U. S. at 323.  The moving party can meet this burden by pointing out to the court a lack of evidence as to an essential element of the non-movant's claim. The burden then shifts to the non-movant to present specific facts, admissible at trial, from which a rational trier of fact could find for the non-movant.  See Bewley v. City of Duncan, 149 F. 3d 1190 (table), 1998 WL 314382, *4 (10th Cir. 1998)(citing Fed. R. Civ. P. 56( c);Celotex Corp. v. Catrett, 477 U. S. at 324). The non-moving party may not rest on his pleadings but must set forth specific facts.  See Applied Genetics Intl v. First Affiliated Secs., Inc., 912 F. 2d 1238, 1241 (10th Cir. 1990). Under rule 56(e), only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief. See Tavery v. United States, 32 F. 3d 1423, 1427 n. 4 (10th Cir. 1994)( citations omitted).

For the purposes of summary judgment, the court will assume the evidence of the non-moving party to be true, will resolve all doubts against the moving party, construe all evidence in the light most favorable to the non-moving party, and draw all reasonable inferences in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 255 (1986).  If the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff, the court should deny summary judgment. See MacDonald v. Eastern Wyoming Mental Health Ctr., 941 F. 2d 1115, 1121 (10th Cir. 1991).

The court should, however, grant summary judgment if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c).  A factual dispute is material only if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U. S. at 248.  A genuine factual dispute requires the non-moving party to show more than a mere scintilla of evidence to overcome a motion for summary judgment.  See id. at 252.  The court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative.  See id. at 250-51.

In a response to a motion for summary judgment, a party cannot rest on ignorance of the facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  See Conaway v. Smith, 853 F. 2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U. S. at 251-52.

## LEGAL ANALYSIS

Each of Green's claims is based in gender discrimination.  The Equal Protection Clause provides that no state may "deny to any person within its jurisdiction the equal protection of the Laws."  U.S. Const. amend. XIV.  The Equal Protection clause is triggered when the government treats one person differently than another person who similarly situated.  See City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985).

Here, no direct evidence of gender discrimination exists.  Accordingly, Green must proceed under an indirect method of proof pursuant to the framework set forth in McDonnell Douglas Corp.

v. Green, 411 U.S. 792 (1973), to establish her claims under Title VII and the Fourteenth Amendment.[2]  See Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995).

The first step of the McDonnell Douglas approach in a discriminatory discharge case requires a plaintiff to establish a prima facie case by showing that: (i) she is a member of a protected class; (ii) she was qualified for her job; (iii) despite her qualifications, she was discharged; and (iv) the job was not eliminated after her discharge.  See English v. Colorado Dep't of Corrections, 248 F.3d 1002, 1008 (10th Cir. 2001).  Upon such a showing, the burden of production, but not persuasion, shifts to the employer to demonstrate a "legitimate nondiscriminatory reason" for the employment action. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  If the employer offers such a nondiscriminatory reason, then the plaintiff bears the burden of showing that the employer's proffered legitimate reasons were "not its true reasons, but were a pretext."  Id. at 142-43.[3]

---

[2] As to Green's claim under the New Mexico Human Rights Act ("NMHRA"), the Court first notes that Green did not address that claim in her response to the Defendants' motion for summary judgment, in which the Defendants argued that Green's NMHRA claim is untimely.  Failure to respond to the Defendants' motion may be deemed acquiescence to that motion.  See D.N.M. L.R.-Civ. 7.1(b).  In addition, at the hearing on this motion, counsel for Green acknowledged "the strength of the claims are brought under federal law, Your Honor, not under the Human Rights Act."  See Transcript of Hearing at 24:17-19.  Thus, the Court could reasonably find that Green has acquiesced to the dismissal of this claim on timeliness grounds.  Even assuming that Green had responded and established the timeliness of her claim, however, the Court would still dismiss this claim on the same substantive grounds that it finds Green's other claims lack merit.

[3] As noted above, Sosaya raises qualified immunity as a defense to Green's § 1983 claims against her in her individual capacity.  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether Sosaya is entitled to qualified immunity, the Court must consider whether Green has (i) alleged facts that assert a constitutional or statutory violation (ii) that was clearly established such that Sosaya would have known her conduct was in violation of Green's statutory or constitutional rights.  Given that the Court is dismissing Green's gender discrimination claims on their merits, even if the Court were to analyze the qualified immunity issue, Green's allegations do not

## I.     GREEN HAS ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATORY DISCHARGE.

The Defendants initially assume for the purposes of this motion that Green has established a prima facie case, see Defendants' Memorandum Supporting Their Motion for Summary Judgment at 8, filed April 8, 2004 (Doc. 28), but at the hearing on this motion, clarified that they dispute the "fourth element" of the prima facie case, whether Green was treated less favorably than similarly situated males.  The Court notes that, while this element was previously considered a part of the prima facie case in discriminatory discharge actions, the United States Court of Appeals for the Tenth Circuit has since rejected this as an element of the prima facie case for discriminatory discharge.  See English v. Colorado Dep't of Corrections, 248 F.3d at 1008 ("[A] plaintiff [in discriminatory discharge cases] does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden[.]").

The Court thus believes Green has established a prima facie case of discriminatory discharge.  She is a woman, and thus a member of a protected class.  There is no dispute as to her qualifications and also no dispute that, despite her qualifications, DOL terminated her employment.  The parties have not offered evidence whether DOL eliminated Green's position.  This Court, following the example of the Tenth Circuit in English v. Colorado Dep't of Corrections, concludes that, given DOL's stated reasons for terminating Green, the position remains.  See English v. Colorado Dep't of Corrections, 248 F.3d at 1008 ("Neither party has raised evidence tending to show whether English's position was eliminated after his discharge.  However, given the DOC's stated reason for firing English -- that he had violated DOC rules by engaging in a sexual relationship with an inmate --

amount to a constitutional or statutory violation.  Thus, Sosaya would be entitled to qualified immunity.

we have no trouble concluding that there is sufficient evidence in the record to find English was not terminated because of a workplace reduction.").

## II.     DOL HAS PROFFERED LEGITIMATE NON-DISCRIMINATORY REASONS FOR TERMINATING GREEN.

Because Green has established a prima facie case, the burden thus shifts to the Defendants to offer a legitimate non-discriminatory reason for discharging Green.  For this second step of the McDonnel Douglas analysis, the Defendants assert that DOL discharged Green because she failed to follow direct instructions from Sosaya, her supervisor, on at least two occasions and because she did not improve her behavior or performance as requested in the written reprimand she received in August 2002.  See Recommendation for Dismissal (October 10, 2002); Memo from Saavedra to Green (August 29, 2002).  The August 2002 reprimand indicates that Neel told Green on June 5, 2002, that Green could not have Griego "hanging around [her] workstation" any longer, and that two employees submitted incident reports suggesting that Griego continued to come around Green's workstation.  See Memo from Saavedra to Green.  The Recommendation for Dismissal indicates that on at least two occasions Green directly disobeyed specific instructions Sosaya gave Green.  First, on October 1, 2002, Sosaya gave Green "instructions regarding her adjudication responsibilities." See Recommendation for Dismissal. Rather than following the instructions or asking Sosaya for clarification, Green went to another employee to discuss Sosaya's instructions.  Sosaya then provided Green with further details and advised Green to bring any questions to Sosaya.  Green continued to approach other employees about Sosaya's instructions rather than either following them or asking Sosaya for clarification.

Second, on October 2, 2002, Green brought Sosaya a case Green had concerns with and

Sosaya reviewed the case, agreed with Green's concerns, and marked pages of the case with "big yellow sticky notes" to indicate which pages Sosaya wanted Green to copy.  Id.  A week later, on October 9, 2002, Sosaya approached Green about the copies, and Green replied that she did not know what Sosaya wanted, did not see the yellow sticky notes and could not remember what case Sosaya was talking about.  Sosaya indicated that these two instances provided a basis for her determination that Green did not follow instructions that her supervisor gave her and thus supported Green's discharge.

Title VII does not facially prohibit the Defendants' proffered reasons, and they thus satisfy the second step of McDonnell Douglas.  See EEOC v. Flasher Co., Inc., 986 F.2d 1312, 1317 (10th Cir.1992)("Step two [of McDonnell Douglas] requires that the defendant explain its actions against the plaintiff in terms that are not facially prohibited. . . .  It does not require the defendant to explain any differences in treatment between the plaintiff and others.").

**III.   GREEN HAS NOT RAISED A GENUINE ISSUE OF MATERIAL FACT WHETHER DOL'S PROFFERED REASONS FOR TERMINATING HER ARE A PRETEXT FOR DISCRIMINATION.**

The burden thus shifts back to Green for the third step of McDonnell Douglas, in which the Court must determine whether Green has countered DOL's articulated non-discriminatory reasons for firing her by providing specific facts showing that DOL's reasons for its decision were pretextual or motivated by gender discrimination.  See Salguero v. City of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004)("Summary judgment in favor of the City is warranted only if Salguero has failed to produce any evidence from which a reasonable inference could be drawn that the City's proffered reasons were pretextual.")(internal quotation marks and citations omitted).  "[I]n determining whether the [employer's] proffered reasons for its decision were pretextual, we must examine the facts as they

appear to the person making the decision to terminate [the employee]."   Id. at 1176 (internal quotation marks and citation omitted).

> A plaintiff typically establishes pretext in one of three ways:
>
> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to a company practice when making the adverse employment decision affecting the plaintiff.   A plaintiff who wishes to show that the company acted contrary to an unwritten policy or to company practice often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.

Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000)(citations omitted).

Green makes three arguments in support of finding that DOL's proffered reasons are actually a pretext for discrimination.   First, she asserts that there is evidence in the record that DOL's asserted reasons are actually false, giving rise to an inference that DOL was actually motivated by an impermissible animus.   Second, she asserts that there is evidence in the record that DOL treated similarly situated males differently, again giving rise to an inference of impermissible motive.   Finally, Green argues that DOL relied on subjective criteria for discharging Green and she is, therefore, entitled to an inference of discrimination.

> **A.   GREEN HAS NOT CREATED A GENUINE ISSUE OF MATERIAL FACT WHETHER THE DEFENDANTS' PROFFERED REASONS FOR HER DISCHARGE ARE FALSE.**

Green first argues that the Defendants' proffered reasons for discharging her are false, which would give rise to an inference that they are a pretext for discrimination.   See Wells v. Colorado Dep't of Transp., 325 F.3d 1205, 1217-18 (10th Cir. 2003)("When evidence indicates that an employer's proffered reason for taking an adverse action is false, a factfinder can decide that the

employer was lying to mask its true unlawful purpose."). As evidence that the Defendants' reasons are false, Green argues that the proffered reasons are inconsistent with the weekly evaluations that Green received.

The Tenth Circuit has held that when an employer's proffered reasons directly contradict earlier evaluations of the employee now asserting employment discrimination, such a contradiction gives rise to genuine issues of material fact whether the proffered reasons are pretextual. See Cole v. Ruidoso Municipal Sch., 43 F.3d 1373, 1380-81 (10th Cir. 1994)(reversing district court's grant of summary judgment on gender discrimination claim, finding that "glaring contradictions" between employee's evaluations and the employer's later reasons for not renewing the employee's contract established genuine issues of material fact as to pretext); Greene v. Safeway Stores, Inc., 98 F.3d 554, 563-64 (10th Cir. 1996)(reversing district court's entry of a directed verdict at the end of the plaintiff's case, finding that there was sufficient evidence in the record such that a jury could disbelieve the employer's stated reasons for terminating the plaintiff which were contradicted by earlier memoranda praising the employee for his work). In both of these Tenth Circuit cases, the employers had earlier issued substantive and explicit evaluations or memoranda extensively praising the employees. After discharging the employee, both employers made statements in support of the decision to terminate the plaintiffs which were directly contrary to the statements in the earlier evaluations or memoranda.

Green asserts that her weekly evaluations are inconsistent with DOL's stated reasons for her termination. The Court does not believe that Green's evaluations are inconsistent with the Defendants' stated reasons for discharging her. First, the reason underlying all of the Defendants' explanations for Green's termination is that the Defendants did not believe she followed instructions.

That reason, which was the basis of the written reprimand she received (stating that she was not following the instruction to keep her boyfriend out of her cubicle), was reflected in her low ranking for "Personel Skills."   Green's ranking for "Personel Skills" never reached higher than an average, or "successful," score of 3 out of 5.  While the remaining portions of Green's evaluations were positive, she continued to struggle in this area, which ultimately became the basis for her termination.

The Tenth Circuit decisions in Cole and Greene do not suggest a different result.  As indicated above, in both of these cases, the employer had issued extensive, substantive, qualitative evaluative statements about the plaintiff that the employer later directly contradicted.  For example, in Cole, the school district asserted that it did not renew the plaintiff's contract as principal because she had been the cause of ongoing conflict between the teachers and the administration for her entire time as principal.  The evaluations that the plaintiff received as principal, however, gave her "the highest possible marks as to every inquiry on the reports, including whether she 'establishes and maintains, with cooperation of the staff, an environment conducive to learning.'"  Cole v. Ruidoso Municipal Sch., 43 F.3d at 1380 (quoting evaluations for the 1984-85, 1985-86, and 1986-87 school years).  Further, the superintendent commented "Texie is fast becoming one of our top administrators" and "Texie seems to get better each year."  See id.

In contrast, Green's evaluations have no such substantive, positive statements that are in direct conflict with the proffered reasons.  Rather than establishing an inconsistency, the Court believes that the evaluations support that the Defendants consistently harbored concerns about Green's "Personel Skills" and ultimately determined that their concerns warranted discharging Green.  The evaluations do not suggest to the Court that there are "such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its

-17-

action that a reasonable fact finder could rationally find them unworthy of credence." Pastran v. K-Mart, 210 F.3d 1201, 1206 (10th Cir. 2000).  It is not the Court's job to determine whether the Defendants made the correct decision, only whether there is a question of fact whether the Defendants made a decision based on an impermissible motive.  The Court does not believe that, on the basis of the evaluations, Green has established a genuine issue of material fact as to pretext.

### B.   GREEN HAS NOT CREATED A GENUINE ISSUE OF MATERIAL FACT WHETHER DOL TREATED SIMILARLY SITUATED MALES DIFFERENTLY, GIVING RISE TO AN INFERENCE OF PRETEXT.

Green also asserts that DOL treated similarly situated males differently.  While both parties argued this point in the context of the prima facie case, as the Court noted above, the Tenth Circuit no longer requires a plaintiff to make this showing as part of the prima facie case.  See English v. Colorado Dep't of Corrections, 248 F.3d at 1008.  Evidence that similarly situated males were treated differently is, however, appropriate evidence for consideration in determining whether there is a genuine issue of material fact as to pretext.  See Kendrick v. Penske Transp. Servs., 220 F.3d at 1232 ("[A] plaintiff may also show pretext on a theory of disparate treatment by providing evidence that he was treated differently from other similarly-situated, nonprotected employees[.]").  The Court will, therefore, assume that Green intended the Court to consider her arguments regarding similarly situated males as evidence of pretext.

The Tenth Circuit has defined a similarly situated employee as one who "deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." See id. (internal quotation marks and citation omitted).  In this case, Green has not pointed to similarly situated males for comparison.  At the hearing on this motion, Green identified Garcia and Griego as similarly situated males.  Initially, the Court does not agree that they were similarly

-18-

situated.  Sosaya did not supervise either Garcia or Griego.  Griego was a supervisor in a different

DOL unit, and Garcia had worked for DOL for six years before DOL hired Green.  Neither was a

probationary employee.  Even assuming that either Garcia or Griego qualified as a similarly situated

employee, the Court does not believe Green has offered evidence that DOL treated them differently.

There is no evidence in the record that Garcia or Griego at any point failed to follow instructions,

much less consistently failed to follow instructions.  Thus there is no evidence that DOL treated them

differently for failing to follow instructions.  The Court does not believe that Green has established

a genuine issue of fact as to pretext on the basis that DOL treated similarly situated males differently.

### C.   GREEN IS NOT ENTITLED TO AN INFERENCE OF DISCRIMINATION ON THE BASIS THAT DOL USED SUBJECTIVE CRITERIA IN DISCHARGING HER.

Green argues that the Tenth Circuit requires an inference of discrimination when an employer

uses subjective criteria in deciding to terminate an employee and relies on Pitre v. Western Electric

Co. Inc., 843 F.2d 1262 (10th Cir. 1988) and Hysten v. Burlington Northern & Santa Fe Ry Co., 296

F.3d 1177 (10th Cir. 2002).  In Pitre, a class action suit on behalf of a class of female employees, the

Tenth Circuit stated:

> [I]n this circuit, the rejection of an otherwise qualified individual on the basis of subjective considerations entitles the plaintiff to the benefit of an inference of discrimination.  We recognize that when management considers individuals for upper level positions, subjective factors must play some role.  Their use does not per se constitute discrimination.  In this case, however, those making the subjective decisions were men, at least some of whom held discriminatory attitudes and who had participated in past discrimination.  The record also reflects specific discriminatory incidents.  When we consider that without the subjective explanations, Western Electric cannot account for the inconsistent application of a seniority policy that was itself found to be a pretext for discrimination, we conclude that the district court properly considered the company's reliance on subjective evaluation methods to be additional evidence of discrimination.

Pitre v. Western Electric Co. Inc., 843 F.2d at 1272 (emphasis added). Thus, the Tenth Circuit did not solely rely on the existence of subjective criteria, but determined that, in the face of other pretextual evidence, the subjective criteria used established additional evidence of pretext. In Hysten, the plaintiff asserted that he was entitled to an inference of discrimination when the employer used subjective criteria to dispose of its investigation into another employee's conduct as compared to its disposition of the investigation into his conduct. The Court rejected the use of this inference because it found the two employees were not similarly situated.

The Court does not believe Green is entitled to an automatic inference of discrimination in this case merely because DOL's decision to terminate her may have rested on subjective criteria. Initially, while Green asserts that DOL rested its decision on the subjective criteria that she behaved "inappropriately" in the workplace with her boyfriend and was "disrespectful," the Recommendation for Dismissal indicates that DOL's concerns with Green rested more on Sosaya's contentions that Green would not follow her supervisor's instructions. Thus, it does not appear that Green's termination occurred solely because of subjective criteria. Further, this case does not have the additional pretextual evidence the Tenth Circuit relied on in Pitre. Green is thus not entitled to this inference of discrimination. Green has not established a genuine issue of material fact on the issue of pretext on the basis that DOL relied on subjective criteria.

## CONCLUSION

While Green has established a prima facie case of discriminatory discharge, the Defendants offered legitimate nondiscriminatory reasons for her termination. Green has not met her burden to create a genuine issue of material fact whether the Defendants' stated reasons are actually a pretext for discrimination. The Court will, therefore, grant the motion and enter summary judgment in favor

of the Defendants.[4]

      **IT IS ORDERED** that the Defendants' Motion for Summary Judgment is granted.  The

Court will enter summary judgment in favor of the Defendants and dismiss all claims with prejudice.


                                        _____

                                        UNITED STATES DISTRICT JUDGE

*Counsel*:

Dennis W. Montoya
Montoya Law Inc.
Albuquerque, New Mexico

       *Attorney for the Plaintiff*

Marcia E. Lubar
Beall & Biehler
Albuquerque, New Mexico

       *Attorneys for the Defendants*

---

    [4] Because the Court has dismissed all of Green's substantive claims, it need not address whether she is entitled to punitive damages and will, likewise, dismiss Green's claim for punitive damages.